### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| COLAS SOLUTIONS, INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>BLACKLIDGE EMULSIONS, INC., a Mississippi Corporation,<br><br>        Defendant. | Case No. 1:16-cv-00548<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY

Plaintiff, Colas Solutions, Inc. ("Colas"), for its complaint against Blacklidge Emulsions, Inc. ("Blacklidge"), hereby alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for declaratory judgment of invalidity and unenforceability of a United States patent pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, and the United State Patent Law, 35 U.S.C. § 100 *et seq.*, and for such other relief as the Court deems just and proper.

### PARTIES

2.     Plaintiff Colas is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 7374 Main Street, Cincinnati, Ohio, 45244.

3.     Colas is a leader in the transportation infrastructure industry and provides products and services related to pavement construction, maintenance, and preservation.

4.      On information and belief, Defendant Blacklidge is a corporation organized and existing under the laws of the State of Mississippi and has its principal place of business at 12251 Bernard Parkway, Suite 200, Gulfport, Mississippi, 39503.

## JURISDICTION AND VENUE

5.      Colas incorporates the foregoing paragraphs of its Complaint by reference as though fully set forth herein.

6.      This is an action for declaratory judgment under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

8.      This Court has personal jurisdiction over Blacklidge based on, inter alia, Blacklidge's business conduct in the state of Ohio related to its Trackless Tack product, the embodiment described in U.S. Patent No. 7,503,724 (the "'724 patent") and U.S. Patent No. 7,918,624 (the "'624 patent").

9.      Venue in this Court is proper under 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS-IN-SUIT

10.      Colas incorporates the foregoing paragraphs of its Complaint by reference as though fully set forth herein.

11.      The '724 patent titled, "Method for bonding prepared substrates for roadways using a low-tracking asphalt emulsion coating," and assigned to Blacklidge, issued on March 17, 2009.  A copy of the '724 patent is attached as Exhibit 1.

12.      The '624 patent also titled, "Method for bonding prepared substrates for roadways using a low-tracking asphalt emulsion coating," and also assigned to Blacklidge, issued on April

5, 2011. The '624 patent claims priority to United States Patent Application No. 11/561,801 ("the '801 Application"), which issued as the '724 patent. A copy of the '624 patent is attached as Exhibit 2.

13.     On December 19, 2012 Colas and Blacklidge entered a license agreement (the "Agreement") through which Colas received, among other consideration, a license to the '724 and the '624 patent.

14.     The Agreement does not restrict Colas's right to challenge the validity of the '724 patent or the '624 patent.

15.     To date, the Agreement has not been terminated.

16.     The '724 patent and the '624 patent were previously asserted by Blacklidge in another lawsuit in this District, *Blacklidge Emulsions, Inc. v. Phillips Oil Company of Central Ohio, Inc.*, OHSD Case No. 12-cv-00406.

**FIRST CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,503,724**

17.     Colas incorporates the foregoing paragraphs of its Complaint by reference as though fully set forth herein.

18.     The '724 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 et seq., including but not limited to Sections 102, 103, and 112 for at least the reasons set forth herein.

19.     Claims 1-33 of the '724 patent are each invalid under 35 U.S.C. § 102 and/or 103 for reasons including, but not limited to, the following:

a.      In view of the publication "A Basic Asphalt Emulsion Manual," Manual Series No. 19, Third Edition attached as Exhibit 3 (the "AEMA Reference") and

3

published in 1998.  The AEMA Reference is prior art to the '724 patent under at least 35 U.S.C. § 102(b).

b.  In view of the publication "A Novel Generation of Tack Coat Emulsions to Avoid Adhesion to Tyres," Bardesi, O.-E. and D. A. Paez,  Paper 4F-086, Proc., 3rd World Congress on Emulsions, Lyon, France, 2002 attached as Exhibit 4 (the "Bardesi Reference"). The Bardesi Reference is prior art to the '724 patent under at least 35 U.S.C. § 102(b).

c.  In view of U.S. Pat. No. 5,769,567 entitled Process and Machine for the Implementation of a Bonding Layer and Road Type Coating Comprising Such a Laye attached as Exhibit 5 (the "Durand Reference") which issued on June 23, 1998.  The Durand Reference is prior art to the '724 patent under at least 35 U.S.C. § 102(b).

d.  In view of Canadian Pat. No. 1 152 795A entitled Process for Tack Coating in Road Surfacing attached as Exhibit 6 (the "Christensen Reference") which published on August 20, 1983.  The Christensen Reference is prior art to the '724 patent under at least 35 U.S.C. § 102(b).

e.  In view of the publication "The Asphalt Handbook," Asphalt Institute publication MS-4, attached as Exhibit 7 ("The Asphalt Handbook") and published in 1989. The Asphalt Handbook is prior art to the '724 patent under at least 35 U.S.C. § 102(b).

f.  Because Blacklidge publically disclosed and offered for sale the subject matter claimed in the '724 patent more than one year before November 18, 2004, which is a year before the earliest priority date that may be accorded to the '724 patent.

4

20. Claims of the '724 patent are invalid under 35 U.S.C. § 112 for reasons including, but not limited to the following:

a.  For lack of written description.  For example, for Claims 13-14, and 21-22 the claim limitation, "penetration altering additives effective to provide a coating having a penetration value less than about 20 dmm and a softening point above about 140ºF. (60º C.)" and claims 29-30  "penetration altering additives effective to provide the bonding layer with a penetration value less than about 20 dmm and a softening point above about 140ºF. (60º C.)" does not have any written description support;

b. For lack of enablement.  The patent specification does not teach a person of ordinary skill in the art to practice any of the claimed inventions without undue experimentation and development.  For example, there is no disclosure in the specification sufficient to teach a person of ordinary skill in the art how to practice the limitations in claims 13-14, 21-22, and 29-30 with respect to penetration altering additives effective to provide a coating/bonding layer with a penetration value less than about 20 dmm and a softening point above about 140ºF. (60º C.)"

c. For indefiniteness.  For example, Claims 1-22 and 31-33, use terms of degree such as "sufficient to" and "effective to", which do not provide objective boundaries supporting the subjective phrase for those skilled in the art to understand how to avoid infringing the term.

5

21.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

22.     A judicial declaration is necessary and appropriate so that Colas may ascertain its rights regarding the '724 patent.

**SECOND CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,918,624**

23.     Colas incorporates the foregoing paragraphs of its Complaint by reference as though fully set forth herein.

24.     The '624 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 et seq., including but not limited to Sections 102, 103, and 112 for at least the reasons set forth herein.

25.     Claims 1-25 of the '624 patent are each invalid under 35 U.S.C. § 102 and/or 103 for reasons including, but not limited to, the following:

      a.     In view of the AEMA Reference. The AEMA Reference is prior art to the '624 patent under at least 35 U.S.C. § 102(b).

      b.     In view of the Bardesi Reference.  The Bardesi Reference is prior art to the '624 patent under at least 35 U.S.C. § 102(b).

      c.     In view of the Durand Reference. The Durand Reference is prior art to the '624 patent under at least 35 U.S.C. § 102(b).

      d.     In view of the Christensen Reference. The Christensen Reference is prior art to the '624 patent under at least 35 U.S.C. § 102(b).

      e.     In view of The Asphalt Handbook.  The Asphalt Handbook is prior art to the '624 patent under at least 35 U.S.C. § 102(b).

      f.    Because Blacklidge publically disclosed and offered for sale the subject matter claimed in the '624 patent more than one year before November 18, 2004, which is a year before the earliest priority date that may be accorded to the '624 patent.

26.    Claims of the '624 patent are invalid under 35 U.S.C. § 112 for reasons including, but not limited to the following:

      a.    For lack of enablement.  The patent specification does not teach a person of ordinary skill in the art to practice any of the claimed inventions without undue experimentation and development.

      b.    For indefiniteness.  For example, Claims 1-24 use terms of degree such as "sufficient to" and "effective to", which do not provide objective boundaries supporting the subjective phrase for those skilled in the art to understand how to avoid infringing the term.

27.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

28.    A judicial declaration is necessary and appropriate so that Colas may ascertain its rights regarding the '624 patent.

### THIRD CLAIM FOR RELIEF
### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S. PATENT NO. 7,503,724

29.    Colas incorporates the foregoing paragraphs of its Complaint by reference as though fully set forth herein.

30.    The '724 patent is unenforceable due to inequitable conduct because Roy S. Blacklidge committed fraud on the United States Patent and Trademark Office ("USPTO") by

intentionally withholding and misrepresenting information submitted in a declaration of "experimental use" filed in the USPTO in support of the patentability of the claims of the '801 Application, which issued as the '724 patent.

31.     In May or June of 2004, Blacklidge publically disclosed the subject matter of each claim of the '724 patent by providing it to the Florida Department of Transportation ("FDOT") for testing.  FDOT tested the Blacklidge trackless tack, which met all of the limitations recited in all the claims of the patents-in-suit.  The test results became publically available in June of 2004. In a July 2004 email exchange, Blacklidge was warned by FDOT that the information that Blacklidge transmitted to FDOT, which included the limitations recited in the claims (*i.e.* the penetration rating and softening point of the tack coat) would be disclosed to the public.

32.     Mr. Blacklidge failed to advise the USPTO that the information that it submitted to the FDOT was publically available information.  Specifically, missing from Mr. Blacklidge's declaration is an email from Mr. Michael Sandow of FDOT advising Blacklidge Emulsions that the information that contains the specification which fall within the recited claims of the '724 patent was publically available due to Blacklidge Emulsions' submission.

33.     Mr. Blacklidge misrepresented in his declaration with respect to his control over the allegedly experimental use.

34.     Mr. Blacklidge incorrectly characterized the use as "experimental" when it was actually an effort to place Blacklidge Emulsions' trackless tack onto an approved list of products available for use in Florida.

35.     Mr. Blacklidge failed to disclose offers for sale to contractors to the USPTO.

36.     Mr. Blacklidge failed to disclose a number of emails to customers and other third-parties predating the critical date.

37.     Mr. Blacklidge failed to correctly identify William Coe as an inventor (and the prior art that he would have known with respect to the recited claims).

38.     These omissions and misrepresentations were done with the intent to deceive the USPTO because Mr. Blacklidge knew at least that if he did not say that he controlled the alleged experimental use, the use would have been considered prior art by the examiner.

39.     These omissions and misrepresentations were done with the intent to deceive the USPTO because Mr. Blacklidge knew at least that if the use in Florida in July of 2004 was not experimental, Mr. Blacklidge would not have been granted the '724 patent.

40.     These omissions and misrepresentations were done with the intent to deceive the USPTO because Mr. Blacklidge knew at least that if he advised the examiner of offers for sale before November 18, 2004, Mr. Blacklidge would not have granted the '724 patent.

41.     These omissions and misrepresentations were done with the intent to deceive the USPTO because Mr. Blacklidge knew at least that if he would have identified William Coe as-an inventor or co-inventor in the Declaration, Mr. Blacklidge would not have been granted the '724 patent.

42.     In his declaration- of "experimental use" with the USPTO, Mr. Blacklidge made at least the following misrepresentations: (1) Mr. Blacklidge misrepresented that he was the inventor of the '724 patent and (2) Mr. Blacklidge misrepresented that it is necessary to conduct months of experiments to determine whether the methods and pavements described in the '724 patent would work for its intended purpose, (3) Mr. Blacklidge misrepresented that Blacklidge did not have the capacity for running the experimental testing of new tack coat, (4) Mr. Blacklidge misrepresented that he was present during testing and direct the alleged experiments of the subject matter claimed in the '724 patent by the FDOT more than one year prior to the

priority date of the '724 patent, (5) Mr. Blacklidge misrepresented that he did not disclose the composition of the subject matter claimed in the '724 patent, (6). Mr. Blacklidge misrepresented that he had not offered the subject matter claimed in the '724 patent for sale before the testing by the FDOT more than one year prior to the priority date of the '724 patent, and (7) Mr. Blacklidge misrepresented that he considered the subject matter claimed in the '724 patent not proven for commercial use.

43.    These representations made by Mr. Blacklidge were inaccurate and misleading for at least the following reasons: (1) third-party Mr. William Coe, is, upon information and belief, an inventor of the subject matter of each claim of the '724 patent; (1) the claimed product was tested in Mississippi before it was used in Florida and the testing in Florida was a routine test required by the state for approval—not experimentation, (3) the methods used to test the subject matter claimed in the '724 patent were established methods in the application of tack coats before the tack coats claimed in the '724 patent were conceived and Blacklidge had reason to believe that such tack coats would work, (4) it was Blacklidge's custom and practice to internally test new products on property owned by Blacklidge or elsewhere before offering new products to a Department of Transportation, (5) an FDOT employee, Aaron Turner, not Mr. Blacklidge or other Blacklidge personnel, addressed a settling problem associated with a container of trackless tack delivered to FDOT without the assistance from Blacklidge, (6) Mr. Blacklidge disclosed product specifications for the subject matter claimed in the '724 patent to FDOT before the critical date, (7) Blacklidge disclosed to FDOT that its new product had a penetration between 10 and 15 dmm and a softening point between 160-170°F, ranges that fall within those claimed in each and every claim in the '724 patent before the critical date, (8) Blacklidge was warned by FDOT that such disclosure to FDOT was a public disclosures, Blacklidge had reason to believe

10

that the subject matter claimed in the '724 patent would work for its intended purpose before the FDOT testing, (9) Blacklidge had tested the subject matter claimed in the '724 patent in Mississippi before offering it to the FDOT, (10) Blacklidge did not disclose the use in Mississippi to the USPTO, (11) Blacklidge also failed to disclose numerous attempts to sell trackless tack from July 2004 through November 2004, more than one year before the priority date of the '724 patent, which qualify as patent baring sales or offers for sale, and (12) emails including Mr. Blacklidge dated July 16, 2004; July 22, 2004; July 27, 2004; August 6, 2004; August 9, 2004; August 19, 2004; September 21, 2004; October 8, 2004; October 10, 2004; October 19, 2004, *inter alia*, evidence the invalidating public uses, disclosures and prior sales before the critical date of the '724 patent.

44.    The patent examiner would have found all of this information critical in determining whether such above-described public uses and sales or offers for sale were patent barring.

45.    But for Mr. Blacklidge's omission and misrepresentation of this material information none of the claims of the '724 patent would have been allowed by the USPTO.

46.    For the foregoing reasons, all the claims of the '724 patent are unenforceable due to the inequitable conduct-of Mr. Blacklidge.

47.    An actual controversy exists between Defendant and Plaintiff as to the enforceability of the '724 patent.

48.    A judicial declaration is necessary and appropriate so that Colas may ascertain its rights regarding the '724 patent.

**FOURTH CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S. PATENT NO.**
**7,918,624**

49.     Colas incorporates the foregoing paragraphs of its Complaint by reference as though fully set forth herein.

50.     The '624 patent is unenforceable due to inequitable conduct because Roy S. Blacklidge committed fraud on the United States Patent and Trademark Office ("USPTO") by intentionally withholding and misrepresenting information submitted in a declaration of "experimental use" filed in the USPTO in support of the patentability of the claims of the '801 Application, which issued as the '624 patent.

51.     In May or June of 2004, Blacklidge publically disclosed the subject matter of each claim of the '624 patent by providing it to the Florida Department of Transportation ("FDOT") for testing.  FDOT tested the Blacklidge trackless tack, which met all of the limitations recited in all the claims of the patents-in-suit.  The test results became publically available in June of 2004. In a July 2004 email exchange, Blacklidge was warned by FDOT that the information that Blacklidge transmitted to FDOT, which included the limitations recited in the claims (*i.e.* the penetration rating and softening point of the tack coat) would be disclosed to the public.

52.     Mr. Blacklidge failed to advise the USPTO that the information that it submitted to the FDOT was publically available information.  Specifically, missing from Mr. Blacklidge's declaration is an email from Mr. Michael Sandow of FDOT advising Blacklidge Emulsions that the information that contains the specification which fall within the recited claims of the '624 patent was publically available due to Blacklidge Emulsions' submission.

53.     Mr. Blacklidge misrepresented in his declaration with respect to his control over the allegedly experimental use.

54.     Mr. Blacklidge incorrectly characterized the use as "experimental" when it was actually an effort to place Blacklidge Emulsions' trackless tack onto an approved list of products available for use in Florida.

55.     Mr. Blacklidge failed to disclose offers for sale to contractors to the USPTO.

56.     Mr. Blacklidge failed to disclose a number of emails to customers and other third-parties predating the critical date.

57.     Mr. Blacklidge failed to correctly identify William Coe as an inventor (and the prior art that he would have known with respect to the recited claims).

58.     These omissions and misrepresentations were done with the intent to deceive the USPTO because Mr. Blacklidge knew at least that if he did not say that he controlled the alleged experimental use, the use would have been considered prior art by the examiner.

59.     These omissions and misrepresentations were done with the intent to deceive the USPTO because Mr. Blacklidge knew at least that if the use in Florida in July of 2004 was not experimental, Mr. Blacklidge would not have been granted the '624 patent.

60.     These omissions and misrepresentations were done with the intent to deceive the USPTO because Mr. Blacklidge knew at least that if he advised the examiner of offers for sale before November 18, 2004, Mr. Blacklidge would not have granted the '624 patent.

61.     These omissions and misrepresentations were done with the intent to deceive the USPTO because Mr. Blacklidge knew at least that if he would have identified William Coe as an inventor or co-inventor in the Declaration, Mr. Blacklidge would not have been granted the '624 patent.

62.     In his declaration- of "experimental use" with the USPTO, Mr. Blacklidge made at least the following misrepresentations: (1) Mr. Blacklidge misrepresented that he was the

inventor of the '624 patent and (2) Mr. Blacklidge misrepresented that it is necessary to conduct months of experiments to determine whether the methods and pavements described in the '624 patent would work for its intended purpose, (3) Mr. Blacklidge misrepresented that Blacklidge did not have the capacity for running the experimental testing of new tack coat, (4) Mr. Blacklidge misrepresented that he was present during testing and direct the alleged experiments of the subject matter claimed in the '624 patent by the FDOT more than one year prior to the priority date of the '624 patent, (5) Mr. Blacklidge misrepresented that he did not disclose the composition of the subject matter claimed in the '624 patent, (6). Mr. Blacklidge misrepresented that he had not offered the subject matter claimed in the '624 patent for sale before the testing by the FDOT more than one year prior to the priority date of the '624 patent, and (7) Mr. Blacklidge misrepresented that he considered the subject matter claimed in the '624 patent not proven for commercial use.

63. These representations made by Mr. Blacklidge were inaccurate and misleading for at least the following reasons: (1) third-party Mr. William Coe, is, upon information and belief, an inventor of the subject matter of each claim of the '624 patent; (1) the claimed product was tested in Mississippi before it was used in Florida and the testing in Florida was a routine test required by the state for approval—not experimentation, (3) the methods used to test the subject matter claimed in the '624 patent were established methods in the application of tack coats before the tack coats claimed in the '624 patent were conceived and Blacklidge had reason to believe that such tack coats would work, (4) it was Blacklidge's custom and practice to internally test new products on property owned by Blacklidge or elsewhere before offering new products to a Department of Transportation, (5) an FDOT employee, Aaron Turner, not Mr. Blacklidge or other Blacklidge personnel, addressed a settling problem associated with a container of trackless

tack delivered to FDOT without the assistance from Blacklidge, (6) Mr. Blacklidge disclosed product specifications for the subject matter claimed in the '624 patent to FDOT before the critical date, (7) Blacklidge disclosed to FDOT that its new product had a penetration between 10 and 15 dmm and a softening point between 160-170°F, ranges that fall within those claimed in each and every claim in the '624 patent before the critical date, (8) Blacklidge was warned by FDOT that such disclosure to FDOT was a public disclosures, Blacklidge had reason to believe that the subject matter claimed in the '624 patent would work for its intended purpose before the FDOT testing, (9) Blacklidge had tested the subject matter claimed in the '624 patent in Mississippi before offering it to the FDOT, (10) Blacklidge did not disclose the use in Mississippi to the USPTO, (11) Blacklidge also failed to disclose numerous attempts to sell trackless tack from July 2004 through November 2004, more than one year before the priority date of the '624 patent, which qualify as patent baring sales or offers for sale, and (12) emails including Mr. Blacklidge dated July 16, 2004; July 22, 2004; July 27, 2004; August 6, 2004; August 9, 2004; August 19, 2004; September 21, 2004; October 8, 2004; October 10, 2004; October 19, 2004, *inter alia*, evidence the invalidating public uses, disclosures and prior sales before the critical date of the '624 patent.

64.     The patent examiner would have found all of this information critical in determining whether such above-described public uses and sales or offers for sale were patent barring.

65.     But for Mr. Blacklidge's omission and misrepresentation of this material information none of the claims of the '624 patent would have been allowed by the USPTO.

66.     For the foregoing reasons, all the claims of the '624 patent are unenforceable due to the inequitable conduct of Mr. Blacklidge.

67.     An actual controversy exists between Defendant and Plaintiff as to the enforceability of the '624 patent.

68.     A judicial declaration is necessary and appropriate so that Colas may ascertain its rights regarding the '624 patent.

## FIFTH CLAIM FOR RELIEF
## RESTITUTION IN THE AMOUNT OF ROYALTIES PAID UNDER THE AGREEMENT

69.     Colas incorporates the foregoing paragraphs of its Complaint by reference as though fully set forth herein.

70.     Fraud, through at least the conduct described in detail in paragraphs 30-46 and 50-66 above, vitiated the Agreement from its inception.

71.     Neither Blacklidge nor Mr. Blacklidge apprised Colas of the facts pleaded in paragraphs 30-46 and 50-66.  Blacklidge knew of these facts prior to entering the Agreement and intentionally concealed their existence from Colas.

72.     Colas would have considered the facts pleaded in paragraphs 30-46 and 50-66 material to its decision to enter into the Agreement with Blacklidge.

73.     Colas's entry into the Agreement was induced by Blacklidge's concealment of the facts pleaded in paragraphs 30-46 and 50-66.

74.     Colas would not have entered into the Agreement had it known the facts pleaded in paragraphs 30-46 and 50-66.

75.     Because Blacklidge's deception and intentional concealment of critical facts intimately related to the '724 and '624 patents infected the Agreement from its inception, Blacklidge was unjustly enriched through its receipt of Colas's royalty payments under the Agreement.

76.     Colas is owed restitution in the amount of royalties it paid Blacklidge under the Agreement from the inception of the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court enter judgment in favor of the Plaintiff granting the following relief:

A.     Entry of judgment that the '724 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

B.     Entry of judgment that the '624 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and 112.

C.     Entry of judgement declaring that the claims of the '724 patent are unenforceable due to inequitable conduct.

D.     Entry of judgement declaring that the claims of the '624 patent are unenforceable due to inequitable conduct.

E.     An order declaring that this is an exceptional case and awarding Colas its costs, expenses, disbursements and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law;

F.     Restitution to Colas in the amount Colas paid Blacklidge under the Agreement from the inception of the Agreement.

G.     Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Colas demands a trial by jury for all issues so triable

Dated: May 13, 2016                              /s/ Kevin W. Kirsch
                                                 Kevin W. Kirsch
                                                 kkirsch@bakerlaw.com
                                                 David A. Mancino
                                                 dmancino@bakerlaw.com
                                                 BAKER & HOSTETLER LLP
                                                 312 Walnut Street, Suite 3200
                                                 Cincinnati, Ohio  45202-4074
                                                 Telephone:    (513) 929-3400
                                                 Facsimile:    (513) 929-0303

                                                 Jared A. Brandyberry
                                                 jbrandyberry@bakerlaw.com
                                                 BAKER & HOSTETLER LLP
                                                 1801 California Street, Suite 4400
                                                 Denver, Colorado 80202-2662
                                                 Telephone:    (303) 764-4072
                                                 Facsimile:    (303) 861-7805

                                                 *Attorneys for Plaintiff*
                                                 *Colas Solutions, Inc.*